UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MCDONALD,<br><br>Plaintiff,<br><br>v.<br><br>CP OPCO, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-04915-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL; DENYING MOTION FOR PREEMPTIVE DENIAL OF CERTIFICATION OF PORTION OF CLASS; GRANTING MOTION TO SEAL**<br><br>Re: Dkt. Nos. 105, 107, 108 |

Pending before the Court is Plaintiff David McDonald's ("Plaintiff") unopposed motion for preliminary approval of a class action settlement. S*ee* Dkt. No. 105 ("Mot."). The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval.

Also pending before the Court is Insperity PEO Services, L.P.'s ("Insperity") motion to preemptively deny certification of a portion of the class alleged. *See* Dkt. No. 108 ("Mot. to Deny"). In addition, Insperity has filed a motion to seal an exhibit in support of its motion to deny certification. *See* Dkt. No. 107.

For the following reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement, **DENIES** Insperity's motion to preemptively deny certification, and **GRANTS** Insperity's motion to file under seal.

I. **BACKGROUND**

A. **Factual Allegations**

Plaintiff David McDonald alleges that he was a former employee of the following entities, all of which were named as defendants: CP OpCo, LLC (doing business as Classic Party Rentals, or "Classic") and Insperity PEO Services, L.P. ("Insperity"), as well as Apollo Global

Management, LLC; Apollo Centre Street Partnership, L.P.; Apollo Franklin Partnership, L.P.; Apollo Credit Opportunity Fund III AIV I LP; Apollo SK Strategic Investments, L.P.; Apollo Special Opportunities Managed Account, L.P.; and Apollo Zeus Strategic Investments, L.P. ("Apollo Defendants" and, collectively with Insperity, "Defendants").[1] *See* Second Amended Complaint ("SAC"), Dkt. No. 50 ¶ 1. Plaintiff alleges that Classic is an event rental company, that Insperity operated Classic's human resources department, and that the Apollo Defendants are Classic's parent companies. *Id.* ¶¶ 20–28.

Plaintiff alleges that he worked as a full-time employee at Classic's location in Burlingame, California, along with approximately 135 other full-time employees. *Id.* ¶¶ 32, 34. In addition to Burlingame, Classic had California locations in Carpinteria, El Segundo, Los Angeles, Modesto, Napa, Sacramento, San Diego, San Jose, Santa Ana, and Thousand Palms. *Id.* ¶ 29. Each of these California locations employed at least 75 people. *Id.* ¶ 31.

Plaintiff had worked for Classic for approximately 18 months when Bright Event Rentals, LLC ("Bright") acquired Classic on July 11, 2017. *Id.* ¶¶ 33, 37–38. Prior to the transaction, Plaintiff received assurances that his job was not at risk, despite the possible sale of the business. *Id.* ¶ 35. On July 10, 2017, Classic's general manager for the Burlingame location announced to the staff members who were physically present that they were terminated, effective July 11. *Id.* ¶ 39. Employees who were not physically present learned of their termination when they came to work on July 11. *Id.* ¶ 40. Bright hired some former Classic employees, but Plaintiff was not among them. *Id.* ¶¶ 43–44. Employees at Classic's other California locations "showed up to work on or around July 10, 2017 and found their facilities locked," and were notified by Defendants that they had been terminated, effective immediately. *Id.* ¶ 45.

Later that same week, Plaintiff received a letter from Insperity, "notifying him that his employment with Defendant Classic and Defendant Insperity was terminated on July 11, 2017." *Id.* ¶ 46.[2] Plaintiff alleges that Defendants did not provide notice of the layoffs to their employees

---

[1] Classic is not one of the Defendants because it is defunct, Mot. at 3, and the Clerk entered default against it on October 23, 2017, Dkt. No. 29.
[2] The exhibit Plaintiff references in his SAC is attached to the First Amended Complaint, Dkt. No. 13, as Exhibit A, but is not attached to the SAC.

2

prior to July 10, *id.* ¶ 38, and did not provide the relevant state, county, or city entities with at least 60 days' notice regarding the closures of their California locations, *id.* ¶ 48.

Plaintiff brings suit on behalf of the following putative class: "All persons who were employed by Defendants, at any of Defendant Classic's California locations and who were terminated pursuant to a mass layoff or termination (as those terms are defined in California Labor Code Section 1400), or a mass layoff or plant closing (as those terms are defined in the Federal WARN Act) by Defendants on or around July 11, 2017 . . . ." *Id.* ¶ 49. He alleges three causes of action: (1) failure to provide timely written notice of a mass layoff or plant closing, in violation of the Federal WARN Act, 29 U.S.C. § 2101, *et seq.*; (2) failure to provide timely written notice of mass layoffs, in violation of California Labor Code § 1400, *et seq.*; and (3) violation of California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq. Id.* ¶¶ 51–78.

### B. Procedural History

Plaintiff filed his initial complaint on August 23, 2017, Dkt. No. 1, and his First Amended Complaint on September 14, 2017, Dkt. No. 13. On October 23, 2017, the clerk issued an entry of default against Classic. Dkt. No. 29. On November 27, 2017, Plaintiff filed the Second Amended Complaint. Dkt. No. 50.

On August 9, 2018, Plaintiff filed a motion for preliminary approval of the class action settlement. Dkt. No. 105.

On August 10, 2018, Insperity moved to preemptively deny certification of a portion of the class alleged, *see* Dkt. No. 108, and to file an exhibit under seal, *see* Dkt. No. 107. Plaintiff filed a statement of non-opposition on August 24. Dkt. No. 109. Insperity later filed a notice that it intended to be bound to the settlement agreement whether or not its motion was granted. Dkt. No. 116.

The Court held a hearing on October 25, after which it took the motions under submission. *See* Dkt. No. 115.

### C. Settlement Agreement

Following discovery, motion practice, and a full-day settlement conference led by a

3

magistrate judge, the parties entered into a settlement agreement. *See* Mot. at 3; Stipulation of Settlement ("Settlement"), Dkt. No. 105-2 ¶¶ I.5–7. The key terms are as follows:

<u>Settlement Class</u>: The proposed settlement class consists of "all persons who were employed by CP OpCo dba Classic Party Rentals at a Covered Location (that is, San Diego, Santa Ana/Orange County, Culver City/Inglewood (Hillcrest Blvd.), El Segundo, Burlingame/San Francisco, Compton, Modesto, Napa, San Jose, and Thousand Palms/Palm Desert) in California and who were terminated from their employment with CP OpCo dba Classic Party Rentals on or around July 11, 2017." Settlement ¶ II.F. Plaintiff estimates this class to consist of 984 people. Mot. at 7.

<u>Release</u>: Class members agree to release "all causes of action that were alleged or reasonably could have been alleged in the Second Amended Complaint based on the facts, legal theories, allegations, or causes of action contained therein concerning: (a) violation of the California or federal WARN Acts; (b) unfair business practices based on the afore-referenced claims; (c) any other claims or penalties under the statutes pleaded in the Action based on the afore-referenced claims; and (d) all damages, penalties, interest, and other amounts recoverable under California and federal law based on the afore-referenced claims, to the extent permissible, including but not limited to the California Labor Code, as to the facts alleged in the Action." Settlement ¶ II.II.

<u>Settlement Fund</u>: $3 million, non-reversionary, funded by Insperity and the Apollo Defendants, with $2.055 million available for class member settlement payments. Mot. at 6–7.

<u>Allocation Plan</u>: The proposed settlement allocates 75% of the net settlement fund to class members who were not rehired within one month of termination and the remaining 25% of the fund to those employees who were rehired within one month. Settlement ¶ III.M.2(a)–(c). Individual payments will be allocated 50% to back wages and 50% to interest and penalties. Settlement ¶ III.M.2(f). Class members who do not opt out will be automatically mailed a settlement, without needing to submit a claim. Settlement ¶ III.M.2(g). Payments intended for class members who cannot be located will be distributed to those who actually cash their settlement checks. Settlement ¶ III.M.2(g). If less than $30,000 remains in the fund after the

4

initial distribution, the residual will be donated to Legal Aid at Work as a cy pres recipient. Settlement ¶ III.M.2(h).

Attorneys' Fees and Costs; Administration: Class counsel are permitted to seek up to 30% of the $3 million settlement fund for attorneys' fees as well as actual litigation expenses incurred up to $15,000. Settlement ¶ III.M.4. The settlement is not contingent upon this provision being granted. *Id.* Class counsel have separately agreed with Defendants to request no more than their lodestar at the time they file their motion for attorneys' fees. Declaration of Eileen B. Goldsmith ("Goldsmith Decl."), Dkt. No. 105-1 ¶ 36. The parties have selected a settlement administrator, which has agreed to cap its costs at $15,000. Settlement ¶¶ III.OO–NN.

Class Representative Award: The settlement allows for an incentive award of up to $15,000 to class representative McDonald but is not contingent upon this award being granted. Settlement ¶¶ III.D, III.M.3.

## II. PROVISIONAL CLASS CERTIFICATION

Provisional class certification is a prerequisite to preliminary approval of a class action settlement.

### A. Legal Standard

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, he must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

    **i.**   **Rule 23(a)**

5

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proposed class has 984 members, making joinder impracticable. *See* Mot. at 10.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359. The proposed class satisfies the commonality requirement because a classwide proceeding could determine whether Defendants provided timely notice of termination so as to comply with the state and federal WARN Acts and whether Defendants are liable as employers under the statute. *See* Mot. at 10–11.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiff's claims are typical because he alleges that he, along with all other class members, was terminated by Classic without notice in violation of the state and federal WARN Acts. *See* Mot. at 11.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named Plaintiff and his counsel have any conflicts of interest with other class members, and (2) whether the named Plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Here, McDonald and his counsel have prosecuted this action vigorously and there is nothing to suggest that any conflicts of interest exist.

In sum, the Court finds that Plaintiff has met his burden to establish the four elements of Rule 23(a) for purposes of provisional class certification.

### ii. Rule 23(b)(3)

Plaintiff must also satisfy the two requirements of Rule 23(b)(3) to provisionally certify the class. First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted). Here, the class members will rely on the same evidence to establish liability: evidence that Classic failed to provide the legally required notice and that Defendants are liable for that failure. *See* Mot. at 11–12. Although the class members will need to rely upon individual evidence to

7

calculate the extent of their individual damages, "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). *See also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("damages determinations are individual in nearly all wage-and-hour class actions").

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* The Court finds that a class action is superior here because it a more efficient use of resources and greatly reduces costs to the class members by allocating costs among them, which is particularly valuable given that individual recoveries will be limited by the 60-work-day cap on back pay. *See Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1182–83 (9th Cir. 1998).

The Court finds that Plaintiff has met the predominance and superiority requirements of Rule 23(b)(3).

### iii. Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiff's counsel's extensive experience litigating class actions, *see* Dkt. Nos.

1  105-4, 105-5, and their diligence in prosecuting this action to date, the Court appoints Rudy,

2  Exelrod, Zieff & Lowe LLP and Altshuler Berzon LLP as class counsel.

### III. PRELIMINARY SETTLEMENT APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

#### A. Legal Standard

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *3 (N.D. Cal. Mar. 27, 2017). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Such signs of self-interest include class "counsel receiv[ing] a disproportionate distribution of the settlement," the negotiation of a "clear sailing" arrangement in which attorneys' fees are paid separate from class funds, and "when the

parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947.

### B. Analysis

#### i. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Plaintiff represents that informal settlement discussions began in March 2018, followed by multiple settlement conferences facilitated by Magistrate Judge Corley in May 2018. Mot. at 14; *see also* Dkt. Nos. 95, 96. The parties filed joint status reports in June, July, and August stating that they were actively discussing and finalizing the terms of a settlement. *See* Dkt. Nos. 98, 102, 103. Class counsel appears to have engaged in many months of arms-length bargaining, some with the help of a magistrate judge, and thus the settlement merits an initial presumption of fairness. *See also Satchell v. Fed. Exp. Corp.,* No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

#### ii. Preferential Treatment

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *In re Tableware*, 484 F. Supp. 2d at 1079.

Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Such awards are "fairly typical" but "discretionary." *Id.* at 958. Plaintiff must provide sufficient evidence to allow the

10

Court to "evaluate [the named plaintiff's] award[ ] individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation omitted). Courts in this district have routinely stated that a $5,000 award is "presumptively reasonable." *See Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009).

The settlement agreement allows Plaintiff to seek an incentive award of up to $15,000 for his role as named plaintiff in the lawsuit. *See* Settlement ¶ III.M.3. However, the settlement is not contingent upon Plaintiff receiving this or any reward. *See id*. Class counsel represents that Plaintiff "provided valuable services," including initiating the case, securing counsel, consulting with counsel, responding to discovery and searching for documents, and participating in a settlement conference. Goldsmith Decl. ¶ 33. Plaintiff will submit a declaration in the motion for final approval detailing the efforts that entitle him to an incentive award. *See id.*; Mot. at 17. The Court finds that at the preliminary approval stage, the Plaintiff's intent to seek an incentive award does not improperly grant preferential treatment to any segment of the class, particularly because the settlement is not contingent upon such an award being granted.

### iii. Settlement Within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiff's case.

Damages under the WARN Acts are calculated as back pay for up to 60 working days, using the improperly terminated employees' hourly wages. *See* 29 U.S.C. §2104(a)(1)(A); Cal. Labor Code §1402(a) & (b); *see also Burns*, 147 F.3d at 1182. Plaintiff calculates that there were 43 working days during the notice period. *See* Mot. at 15. Assuming each employee would have worked eight hours per day, there are a total of 344 hours of potential back pay available. *See id.*

11

Plaintiff estimates that the 984-member class could be entitled to up to $8 million in recovery. *See id.* The $3 million gross settlement fund thus represents 37.5% of Defendants' maximum exposure. *See id.*

Plaintiff contends that the settlement is reasonable given "the very significant risks and delays of continued litigation." Mot. at 15. In particular, Plaintiff notes that there would be a dispute over whether the Apollo Defendants and Insperity could be held liable as employers, when the direct employer was Classic, which is now defunct. *See id.* Plaintiff argues that this litigation "would raise complex legal and factual issues" and that there is no on-point California appellate authority regarding parent liability under the state WARN Act. *Id.* Plaintiff represents that though Plaintiff defeated Apollo's motion to dismiss on the basis of employer liability, continuing to litigate this question would be costly and uncertain. *See id.*

Given the risks and costs of continued litigation, the Court finds that the settlement is within the range of possible approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies.

* * *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## IV. MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

|     |       |                                                                               |
|-----|-------|-------------------------------------------------------------------------------|
|     | (i)   | the nature of the action;                                                     |
|     | (ii)  | the definition of the class certified;                                        |
|     | (iii) | the class claims, issues, or defenses;                                        |
|     | (iv)  | that a class member may enter an appearance through an attorney if the member so desires; |
|     | (v)   | that the court will exclude from the class any member who requests exclusion; |
|     | (vi)  | the time and manner for requesting exclusion; and                             |
|     | (vii) | the binding effect of a class judgment on members[.]                          |

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, Dkt. No. 105-3, is the best practicable form of notice under the circumstances.

## VI. MOTION TO PREEMPTIVELY DENY CLASS CERTIFICATION

In conjunction with the motion for preliminary approval of the class action settlement, Insperity moved to partially deny certification as to the employees who worked at Classic facilities employing fewer than 50 employees. *See* Mot. to Deny at 1. Plaintiff did not oppose this motion. Dkt. No. 109. Under the terms of the settlement agreement, Insperity reserved the right to withdraw if this motion was not granted. S*ee* Mot. to Deny at 1; Settlement ¶ II.J. However, following the hearing, Insperity pledged that it would be bound by the settlement if approved regardless of whether its motion was granted. *See* Dkt. No. 116 at 1.

A party opposing a class may move to decertify the class on the basis that the prerequisites and grounds for a certification do not exist. *Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008). And a "defendant may move to deny class certification before a plaintiff files a motion to certify a class." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009).

However, Insperity admitted at the hearing that its preemptive attempt to decertify a portion of the class alleged in the complaint—but not included in the class definition in the settlement agreement—was a novel legal argument. The Court declines to accept Insperity's invitation for such a novel extension of the law, particularly where the putative class members are unrepresented and the settlement agreement is not contingent upon approval of the motion. The Court simply does not have an adequate basis for concluding on this record that these absent class members could never establish a basis for classwide relief. Accordingly, the Court **DENIES** Insperity's motion to preemptively deny class certification as to a portion of the class originally

13

1 alleged.

## VII. MOTION TO SEAL

In connection with its preemptive motion to deny certification, Insperity filed a motion to file under seal the entirety of Exhibit A to the Declaration of John Carney. *See* Dkt. No. 107 at 1.

### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotation omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotation omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are

14

privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Records attached to nondispositive motions, however, are not subject to the strong presumption of access. *See Kamakana*, 447 F.3d at 1179. Because such records "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure. *Id.* at 1179–80 (quotation omitted). This requires only a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

### B. Analysis

The exhibit Insperity seeks to seal is more than tangentially related to the underlying cause of action, and the Court therefore applies the "compelling reasons" standard. The exhibit consists of personal information of former employees, including their names, email and home addresses, pay rates, and demographic characteristics. The Court finds that the sensitive nature and intended confidentiality of this information meets the compelling reasons standard, because public release of this personal information could become a vehicle for improper purposes. Accordingly, the Court **GRANTS** the motion to seal.

//
//
//
//
//
//
//
//

15

## VIII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement, **DENIES** Insperity's motion to preemptively deny certification, and **GRANTS** Insperity's motion to file under seal.

The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this order:

| Event | Date |
| --- | --- |
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Filing deadline for reply brief in support of motions | |
| Deadline for Defendants to file declarations verifying CAFA notice was provided | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 1/28/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge