JOHN T. MULLAN (SBN: 221149)
Email: jtm@rezlaw.com
MICHELLE G. LEE (SBN: 266167)
Email: mgl@rezlaw.com
MEGHAN F. LOISEL (SBN: 291400)
Email: mfl@rezlaw.com
**RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513

JAMES M. FINBERG (SBN 114850)
jfinberg@altber.com
EILEEN B. GOLDSMITH (SBN 218029)
egoldsmith@altber.com
MEREDITH A. JOHNSON (SBN 291018)
mjohnson@altber.com
**ALTSHULER BERZON L.L.P.**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiff DAVID MCDONALD,
and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| DAVID MCDONALD, on behalf of himself and the Class,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CP OPCO, LLC, dba CLASSIC PARTY RENTALS; INSPERITY PEO SERVICES, L.P.; APOLLO GLOBAL MANAGEMENT, LLC; APOLLO CENTRE STREET PARTNERSHIP, L.P.; APOLLO FRANKLIN PARTNERSHIP, L.P.; APOLLO CREDIT OPPORTUNITY FUND III AIV I LP; APOLLO SK STRATEGIC INVESTMENTS, L.P.; APOLLO SPECIAL OPPORTUNITIES MANAGED ACCOUNT, L.P.; APOLLO ZEUS STRATEGIC INVESTMENTS, L.P.; and DOES 1-20<br><br>        Defendants       / | Case No. CV 4:17-cv-04915-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   May 9, 2019<br>Time:   2:00 p.m.<br>Ctrm.: 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr.<br><br>Trial Date:  June 24, 2019<br>Complaint Filed: August 23, 2017 |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE THAT on May 9, 2019, at 2:00 p.m., in Courtroom 2 of United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94162, or as soon thereafter as the parties may be heard, Plaintiffs will and hereby do, move the Court for an order:

(1) Confirming as final the certification of the settlement class under Federal Rule of Civil Procedure 23 (Rule 23);

(2) Confirming as final the appointment of Plaintiff David McDonald as the class representative of the class pursuant to Rule 23;

(3) Appointing Plaintiff's attorneys as Class Counsel for the class pursuant to Rule 23(g);

(4) Approving the Parties' class action settlement as fair, reasonable, and adequate, and binding on all Class Members;

(5) Directing the Parties and the Settlement Administrator to implement the terms of the Agreement pertaining to the distribution of the Settlement Fund and Net Settlement Fund;

(6) Making findings of fact and stating conclusions of law in support of the foregoing; and,

(7) Directing the entry of judgment pursuant to Fed. R. Civ. P. 54 and 58.

This Motion is based on the parties' Stipulation of Settlement of Class Action and Release of Claims (Dkt. No. 105-2), the Memorandum of Points and Authorities, the Declarations of John T. Mullan and Settlement Administrator, Melissa E. Baldwin (Director of Claims Administration, RG/2 Claims Administration, LLC), the Proposed Order and Proposed Judgment filed herewith, the other records and pleadings filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED:  April 22, 2019                             Respectfully submitted,


By:   *John T. Mullan*
         JOHN T. MULLAN

1

MICHELLE G. LEE
MEGHAN F. LOISEL
**RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**

JAMES M. FINBERG
EILEEN B. GOLDSMITH
MEREDITH A. JOHNSON
**ALTSHULER BERZON, L.L.P.**

*Attorneys for Plaintiff DAVID MCDONALD and
the Class*

2

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ..........................................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY ...........................................................3

    A.   The Court Certified Classes for Settlement Purposes and Granted Preliminary Approval to the Settlement Agreement ...............................4

    B.   Settlement Fund.......................................................................................4

    C.   Plan of Distribution to Class Members. ..................................................5

    D.   Release of Claims ...................................................................................7

    E.   Settlement Administration.......................................................................7

        1.   Class Notice. .............................................................................7

        2.   Only One of the 1,039 Putative Class Members Opted Out. .....8

        3.   Counsel Are Not Aware of any Class Member Objections to the Settlement or any of its Terms. .......................................8

        4.   Challenges to Classification in Non-Rehire or Rehire Subfunds. .................8

III. DISCUSSION .............................................................................................................9

    A.   Final Confirmation of Class Certification is Appropriate. ........................9

    B.   Final Settlement Approval is Appropriate..................................................9

        1.   The settlement is entitled to a strong presumption of fairness. ...............10

        2.   The settlement is fair, reasonable, and adequate. .....................11

            a.   The strength of Plaintiffs' case and the risk of maintaining class action status throughout the trial. .............11

            b.   The risk, expense, complexity, and likely duration of further litigation....................................................12

            c.   Settlement Amount...........................................................13

            d.   Extent of discovery and investigation completed.........................14

            e.   Experience and views of counsel. ...................................15

            f.   Class Members' reactions to the proposed settlement. ................15

IV.  CONCLUSION .........................................................................................................16

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Churchill Vill., L.L.C. v. Gen. Elec.,*
5      361 F.3d 566 (9th Cir. 2004) ............................................................................................2

6

*Garner v. State Farm Mut. Auto. Ins. Co.,*
7      No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) ..............................15

8

*Linney v. Cellular Alaska Partnership,*
     151 F.3d 1234 (9th Cir. 1998) ........................................................................................14

9

*Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.,*
10      221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................15

11

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,*
12      688 F.2d 615 (9th Cir. 1982) ...............................................................................11, 13, 15

13

*In re Omnivision Tech., Inc.,*
14      559 F.Supp.2d 1036 (N.D. Cal. 2008) (Conti, J.) .............................................................9, 10

15

*In re Syncor Erisa Litig.,*
     516 F.3d 1095 (9th Cir. 2008) ..........................................................................................9

16

*Torrisi v. Tucson Elec. Power Co.,*
17      8 F.3d 1370 (9th Cir. 1993) ............................................................................................11

18

*Trew v. Volvo Cars of N. Am., LLC,*
19      No. 05-1379, 2007 WL 2239210 (E.D. Cal. Jul. 31, 2007) .................................................10

20

*Wren v. RGIS Inventory Specialists,*
     No. 06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...........................................10, 15

21

**Other Authorities**

22

Class Action Fairness Act
23      28 U.S.C. § 1715 ...........................................................................................................4

24

California WARN Act
25      Labor Code §1400 *et seq.* ......................................................................................*passim*
     Labor Code §1402(a).......................................................................................................6
26      Labor Code §1402(a) & (b)..............................................................................................13

27

28

Federal Rules Civil Procedure
    Rule 23 ........................................................................................................4, 9
    Rules 23(a) and 23(b)(3) .........................................................................2, 4, 9
    Rule 23(e) .........................................................................................................1
    Rule 23(e)(2) ....................................................................................................9

Federal WARN Act
    29 U.S.C. §2101 *et seq.* ..............................................................................*passim*
    29 U.S.C. §§2101(a)(6), 2104(a)(1) ................................................................6
    29 U.S.C. §2104(a)(1)(A)...............................................................................13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3   In this class action lawsuit, Plaintiff David McDonald requests that the Court grant final

4   approval of the Parties'[1] settlement of Plaintiffs' claims pleaded in the Second Amended

5   Complaint ("SAC") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  The

6   settlement amount of $3,000,000 is "fair, reasonable, and adequate" within the meaning of

7   Rule 23(e).  The Class includes approximately 1,039 individuals, comprised of all persons who

8   were employed by CP OpCo dba Classic Party Rentals at a Covered Location (that is, San Diego,

9   Santa Ana/Orange County, Culver City/Inglewood (Hillcrest Blvd.), El Segundo,

10   Burlingame/San Francisco, Compton, Modesto, Napa, San Jose, and Thousand Palms/Palm

11   Desert) in California and who were terminated from their employment with CP OpCo dba Classic

12   Party Rentals on or around July 11, 2017.  Class Members stand to recover substantial and

13   immediate monetary benefits under the settlement.  Only one Class Member has opted out.

14   Declaration of John T. Mullan In Support of Motion for Final Approval ("Mullan Decl. ISO

15   Final Approval"), ¶ 3; Declaration of Melissa E. Baldwin ("Baldwin Decl."), ¶ 10, Exh. C).

16   Class Counsel is not aware of any objections.  Mullan Decl., ¶ 3.

17   The $3 million non-reversionary settlement satisfies the Ninth Circuit's standards for

18   approval.  Class Counsel vigorously litigated this case, conducting extensive formal, informal

19   and third-party discovery and engaging in active motion practice.  The Apollo Defendants had

20   moved to dismiss the SAC, contending that plaintiff had failed sufficiently to allege that those

21   Defendants were liable to the Plaintiff and putative class as their employer under the federal and

22   state WARN Acts. Dkt. 66.  The Court denied that motion.  April 26, 2018.  Dkt. 87.  At the time

23   the settlement was reached, Plaintiff and Defendant Insperity had fully briefed Insperity's motion

24   _____

25   [1] All capitalized terms appearing in this memorandum that are not defined herein have the
meanings assigned to them in the Stipulation of Settlement of Class Action and Release of
26   Claims (Dkt. No. 105-2).  "Parties" is defined as Named Plaintiff David McDonald, and
Defendants Insperity PEO Services, L.P.; Apollo Global Management, LLC; Apollo Centre
27   Street Partnership, L.P.; Apollo Franklin Partnership, L.P.; Apollo Credit Opportunity Fund III
AIV I L.P.; Apollo SK Strategic Investments, L.P.; Apollo Special Opportunities Managed
28   Account, L.P.; and Apollo Zeus Strategic Investments, L.P.

for judgment on the pleadings, in which Insperity contended that Plaintiff had failed sufficiently to allege that it was a joint employer that could be liable to the Plaintiff and putative class.  That motion was still pending at the time the settlement was reached.  Only after intensive formal mediation and further arms-length negotiations did the parties reach an agreement on settlement.  Class Counsel were fully informed about the strengths and weaknesses of the claims of Class members at the time the settlement was negotiated.

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  It is uncertain whether Plaintiffs would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal.  Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed $3 million settlement, the proposed settlement is in the best interest of the Class.

The response of Class Members to the proposed settlement has been very favorable to date.  To Class Counsel's knowledge, no Class Member has objected to the settlement, and only one of the approximately 1,039 Class Members has opted out.  The period for opting-out or objecting to the settlement has now ended.[2]  The lack of any objections and the fact that only one Class Member has opted out indicate that the Class has a favorable view of the settlement.  This factor too weighs in favor of final settlement approval.

In connection with requesting final settlement approval, Plaintiffs also request that the Court:  (1) confirm as final the certification of the Class under Fed. Rules Civ. P. 23(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff McDonald as the class representative of

---

[2]  The period to submit objections, requests for exclusion, or to contest an individual's settlement calculation ran through April 9, 2019, the postmark deadline for submitting such responses.

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 4:17-cv-04915-HSG

the Class; and (3) enter the proposed final approval order and enter judgment.  Plaintiffs also request the Court award their requested reasonable attorney's fees and costs.  Additionally, while the settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for his service to and risks taken on behalf of the Class.[3]

## II.      FACTUAL AND PROCEDURAL HISTORY

This action was filed on August 23, 2017, alleging that Defendants CP OpCo and Insperity violated the federal and state WARN Acts.  Dkt. 1.  The complaint was subsequently amended to add Apollo Global Management, LLC and several Apollo funds as defendants (Dkt. Nos. 13 & 50).  Plaintiff alleged that Classic's California locations had been closed as part of a sale of those locations to Bright Event Rentals on or about July 11, 2017, and all employees had been laid off without receiving notice of the closures at least 60 days in advance as required by the WARN Acts.

As described more fully in the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 105) and the supporting Goldsmith Declaration, the Parties engaged in extensive litigation over the course of over a year, including active motion practice and discovery (Dkt. No. 105-1, ¶¶ 21-22).  The Apollo Defendants moved to dismiss contending that Plaintiff had failed sufficiently to allege that those Defendants were liable to the Plaintiff and putative class as their employer under the WARN Acts.  Dkt. No. 66.  The Court denied the motion on April 26, 2018.  Dkt. No. 87. Insperity later filed a motion for judgment on the pleadings, in which it contended that Plaintiff had failed sufficiently to allege that it was a joint employer that could be liable to the Plaintiff and putative class.  Dkt. No. 78.  At the time the parties reached a settlement, the Court had not yet ruled on Insperity's motion.

Class Counsel conducted a detailed factual investigation of the claims at issue in this case. Plaintiffs' discovery included documents requests to Insperity and the Apollo Defendants, and third-party subpoenas to Bright and Standard Party Rentals (which acquired one Classic

---

[3] Plaintiffs separately filed a Motion for Attorneys' Fees and Costs (Dkt. No. 126), and a Motion for Class Representative Service Payment (Dkt. No. 130).

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 4:17-cv-04915-HSG

location), that yielded thousands of pages of documents relating to (among other things) the structure of CP OpCo and its relationships with Insperity and the Apollo Defendants, and the sale of Classic's California locations to Bright and Standard (Dkt. No. 105-1, ¶ 23).  Plaintiff also secured employee data from Insperity, Bright, and Standard, including extensive payroll data, that enabled the Parties to evaluate the Defendants' damages exposure.  *Id.*

It was only after this motion practice and these extensive investigations that the parties reached a settlement in this case with the assistance of Magistrate Judge Jacqueline Scott Corley on May 21, 2018.  In the weeks following reaching the settlement in May, the parties continued to engage in intensive discussions to reach agreement as to the ancillary terms of the settlement (*id.*, at ¶26).  At the time of the settlement, the parties were fully familiar with the facts and law, and the strengths and weaknesses of the class claims (*id.*, at ¶27).

### A.   The Court Certified a Class for Settlement Purposes and Granted Preliminary Approval to the Settlement Agreement

On January 28, 2019, the Court granted Plaintiffs' Preliminary Approval Motion (Order Granting Motion for Preliminary Approval, Dkt. No. 119).  The Court's Order:  (1) determined that the requirements of Rule 23 were satisfied for purposes of certifying the class under Rule 23(a) and Rule 23(b)(3) for settlement (*id.*, at pp. 7-8); (2) appointed Plaintiff as the class representative under Rule 23 and appointed Plaintiff's attorneys as Class Counsel (*id.*, at p.9); (3) preliminarily approved the Parties' class action settlement agreement, finding that it was "fair, reasonable, and adequate" (*id.*, at p. 12); and (4) ordered that notice of the settlement be directed to the Classes in the form and manner proposed by the Parties (*id.*, at p. 13).  The Court subsequently set May 9, 2019 as the time for the Fairness Hearing.  Dkt. No. 121.

Notification of the settlement was provided to the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715 (Mullan Decl. ISO Final Approval, ¶ 4).

### B.   Settlement Fund

The Stipulation of Settlement of Class Action and Release of Claims preliminarily approved by the Court ("Stipulation of Settlement"), filed as Docket Number 105-2, provides for Defendant to make a non-reversionary settlement payment to the Class of $3,000,000 (the Gross

4

Settlement Amount) to compensate Class Members, pay reasonable attorney's fees and costs (up to $900,000 in fees and approximately $9,894 in costs, as determined by the Court), pay a service payment of $15,000 to the Class Representative if the Court approves the request, and pay the costs of the Settlement Administrator (capped at $15,000).[4]  All of the foregoing payments will be made from the Gross Settlement Amount.  Stipulation of Settlement ¶III.B.

Checks will be mailed directly to each Class Member—no further action is required for a Class Member to receive a check.  There will be a 90-day check cashing period for initial settlement payments.  Stipulation of Settlement ¶III.M.2(h).  Following that initial distribution, any uncashed amount shall be redistributed to those class members who cashed their checks in the initial distribution.  If less than $30,000 remains uncashed after the initial distribution, the residual amount shall be donated to a *cy pres* recipient, Legal Aid at Work.  Settlement ¶III.M.2(h).  Legal Aid at Work is a suitable *cy pres* recipient because its purpose of providing legal services to workers on matters concerning their employment has a close nexus to the state and federal WARN Acts' purpose of protecting the interests of workers.  *See, e.g.*, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011); *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 475095, at *6 (N.D. Cal. Feb. 6, 2017); *see also* Goldsmith Decl. ISO Preliminary Approval (Dkt. No. 105-1) ¶35.

### C.    Plan of Distribution to Class Members.

Distributions to Class Members will be made from the net Settlement Fund after deductions are made for the Settlement Administrator's reasonable costs, court-approved attorney's fees and costs, and any court-approved service payment to the Plaintiff.  The funds available for distribution to the Class are estimated to be approximately $2,060,106, for a class of approximately 1,039 employees.  Mullan Decl. ISO Final Approval, ¶ 5.  Class Members are not required to submit claims or take any other affirmative action to be entitled to their shares of the

---

[4]  As noted above, Plaintiffs have moved separately for an award of attorney's fees and costs, and for a Class Representative Service Payment, which motions will be heard at the Final Fairness Hearing (*see* Dkt. Nos. 126 & 130).

1  Net Settlement Fund.  Each Class Member who could be located in the notice process will

2  automatically receive a settlement payment.

3      The Net Settlement Fund will be divided into two Subfunds:  a Non-Rehire Subfund for

4  class members who were not rehired by Bright or Standard within one month after their

5  termination by CP OpCo; and a Rehire Subfund for class members who were rehired by Bright or

6  Standard within that period.  Stipulation of Settlement ¶III.M.2(a).

7      The Net Settlement Fund is allocated 75% to the Non-Rehire Subfund, and 25% to the

8  Rehire Subfund, to account for the respective value of the claims of class members who were, or

9  were not, rehired by Bright or Standard shortly after the Classic locations closed.  Settlement

10  ¶III.M.2(a)-(c).  As explained in detail on Plaintiffs' Motion for Preliminary Approval (Dkt.

11  No. 105, p. 7), workers who were not promptly rehired have more valuable WARN Act claims

12  than those who were rehired.  Under the federal Act, only a worker who suffers an "employment

13  loss," meaning termination or a layoff exceeding six months, is eligible for back pay.  29 U.S.C.

14  §§2101(a)(6), 2104(a)(1).  Under the California Act, only an employee who "lost his or her

15  employment" is entitled to back pay.  Labor Code § 1402(a).

16      Class members' assignment to the Non-Rehire or Rehire Subfunds was determined from

17  information obtained from Bright and Standard in discovery.  Stipulation of Settlement

18  ¶III.M.2(d).  Bright and Standard identified those Classic employees whom they rehired upon

19  acquiring the Classic locations in California.  This information was presumed accurate, unless a

20  class member submitted documentation to the Settlement Administrator establishing that he or

21  she should be assigned to a different Subfund.  Stipulation of Settlement ¶III.M.2(d).  No Class

22  Member challenged their assignment to the Non-Rehire or Rehire Subfunds.  Baldwin Decl. ¶ 12.

23  Individual settlement payments will be calculated as each class member's pro rata share of his or

24  her respective Subfund, based on the class member's final hourly wage rate with Classic.

25  Stipulation of Settlement ¶III.M.2(e).  The average individual settlement payment overall, based

26  on a Net Settlement Fund of $2,060,106, is $1,983.  Mullan Decl. ISO Final Approval, ¶ 5.

27  Individual settlement payments will be allocated 50% to wages and 50% to interest and penalties.

28  Stipulation of Settlement ¶III.M.2(f).

The Agreement sets forth a Plan of Distribution for distributing the net settlement fund among Class Members who do not timely opt out.  Stipulation of Settlement, ¶ III.M.2.  Class members did not have to submit a claim or fill out a form.  Settlement ¶III.M.2(g).  The Settlement also required the Settlement Administrator to take reasonable steps to locate class members whose notices are returned as undeliverable.  Settlement ¶III.L.3-4.  Class Members whose notices were returned as undeliverable, and for whom a valid address could not be ascertained, will not receive a settlement payment, but will be bound by the Settlement.  The value of those class members' settlement payments will be distributed to those class members who could be located in the Notice process.  Stipulation of Settlement ¶III.M.2(g).

### D.    Release of Claims

The Agreement provides that all Class Members who do not opt out will release Defendants from the following claims:

> all causes of action that were alleged or reasonably could have been alleged in the Second Amended Complaint based on the facts, legal theories, allegations, or causes of action contained therein concerning:  (a) violation of the California or federal WARN Acts; (b) unfair business practices based on the afore-referenced claims; (c) any other claims or penalties under the statutes pleaded in the Action based on the afore-referenced claims; and (d) all damages, penalties, interest, and other amounts recoverable under California and federal law based on the afore-referenced claims, to the extent permissible, including but not limited to the California Labor Code, as to the facts alleged in the Action.

(Stipulation of Settlement, Dkt. No. 105-2, II.).

In addition to these releases, the Agreement also provides that Plaintiff David McDonald, should he be awarded a Court-approved service payment, must execute and provide to Defendants an individual general release (*id*., at III.D).

### E.    Settlement Administration

#### 1.    Class Notice.

Pursuant to the Order Granting Motion for Preliminary Approval, on February 26, 2019, the Settlement Administrator mailed the approved Class Notice to putative Class Members identified by Insperity (Baldwin Decl., ¶ 6).  Consistent with the parties' Agreement and the Order Granting Preliminary Approval, the Settlement Administrator searched for more recent

7

addresses, took all reasonable steps to obtain correct addresses for Class Members whose Notices were returned undeliverable, and re-mailed Notices to Class Members for whom new addresses were located (*id*., at ¶¶ 5 & 9).  The Settlement Administrator also established a website and toll-free phone number to respond to Class Members' questions regarding the settlement (*id*., at ¶¶ 7-8).

### 2.    Only One of the 1,039 Putative Class Members Opted Out.

Class Members who wished to opt out of the Settlement were required to submit a written and signed request for exclusion by the deadline of April 9, 2019 provided in the Class Notice (Stipulation of Settlement, Dkt. No. 105-2, III.L.7; Order Setting Settlement Schedule, Dkt. No. 121).  For a request for exclusion to be timely, it had to be mailed to the Settlement Administrator and postmarked by April 9, 2019 (*ibid*; Baldwin Decl., ¶ 6).

The Settlement Administrator received only one request for exclusion (Baldwin Decl., ¶ 10, Exh. C).  Accordingly, out of a Class of approximately 1,039 members, only one potential Class Member excluded himself from the settlement.

### 3.    Counsel Are Not Aware of any Class Member Objections to the Settlement or any of its Terms.

Class Members who did not opt out and who wished to object to the Settlement could do so by submitting written objections to the Court by April 9, 2019, the deadline specified in the parties' Agreement, the Court's Preliminary Approval Order, and provided in the Class Notice (Stipulation of Settlement, Dkt. No. 105-2, III.L.8; Order Setting Settlement Schedule, Dkt. No. 121).  Class Counsel are not aware of any objections sent to and filed by the Court (Mullan Decl. ISO Final Approval, ¶ 3).

### 4.    Challenges to Classification in Non-Rehire or Rehire Subfunds

Class Members were given the opportunity to challenge whether they were correctly designated in the Non-Rehire or Rehire Subfund by submitting documentation postmarked by April 9, 2019.  The Settlement Administrator did not receive any such challenges to whether they were correctly designated in the Non-Rehire or Rehire Subfund, such that their settlement amounts were properly calculated (Baldwin Decl., ¶ 12).

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 4:17-cv-04915-HSG

### III.   **DISCUSSION**

####    A.   **Final Confirmation of Class Certification is Appropriate.**

The Order Granting Motion for Preliminary Approval certified the Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the representative for the Class and appointed Plaintiff's attorneys as Class Counsel.  Dkt. No. 119. The Court found, for purposes of settlement, that the Class meets all of the requirement for maintenance of a class action under Rule 23(a) and Rule 23(b)(3) (*ibid.*).

Notice of the class action was directed to all Class Members in a form and manner that complied with Rule 23 (*see supra* § II.E.1).  As noted above, Class Counsel are not aware of any objections by a Class Member to any aspect of the proposed settlement and only one of the approximately 1,039 Class Members opted out.  As noted above, the April 9, 2019 deadline for opting out of or objecting to the settlement has now passed.

For these reasons, and for the reasons set forth in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 105), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff McDonald as the Class Representative.

####    B.   **Final Settlement Approval is Appropriate.**

In order to approve a settlement that would bind class members, the court must find, after notice and a hearing, that the proposed settlement is "fair, reasonable, and adequate." FRCP 23(e)(2).

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor Erisa Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  "Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."  *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008) (Conti, J.).  While "[t]he court must find that the proposed settlement is fundamentally fair, adequate, and reasonable" (*id.*, at 1040), "the court's inquiry is ultimately limited 'to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

9

parties.' ...  The court, in evaluating the agreement of the parties, is not to reach the merits of the

case or to form conclusions about the underlying questions of law or fact."  *Ibid*.  (citation

omitted; quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San*

*Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

**1.     The settlement is entitled to a strong presumption of fairness.**

"When seeking final approval, plaintiffs may establish a presumption of fairness by

demonstrating:  '(1) [t]hat the settlement has been arrived at [through] arm's-length bargaining;

(2) [t]hat sufficient discovery has been taken or investigation completed to enable counsel and the

court to act intelligently; (3) [t]hat the proponents of the settlement are counsel experienced in

similar litigation; and (4) [t]hat the number of objectors or interests they represent is not large

when compared to the class as a whole."  *Trew v. Volvo Cars of N. Am., LLC*, No. 05-1379, 2007

WL 2239210, *2 (E.D. Cal. Jul. 31, 2007) (quoting Alba Conte and Herbert B. Newberg,

Newberg on Class Actions § 11:41 (2006)); *see Wren v. RGIS Inventory Specialists*, No. 06-

05778, 2011 WL 1230826, *6 (N.D. Cal. Apr. 1, 2011) (Spero, M.J.) (initial presumption of

fairness is usually established if settlement is recommended by class counsel after arm's-length

bargaining).

In this case, as discussed more extensively in Plaintiffs' Motion for Preliminary Approval

of Class Action Settlement (Dkt. No. 105, p.11; Dkt. No. 105-1, ¶¶ 4-17; Dkt. No. 105-5, ¶¶ 3-

22) and in Plaintiffs' Motion for Attorney's Fees (Dkt. No. 126):  (1) Class Counsel are highly

experienced in class action wage and hour litigation; (2) Plaintiffs (and Defendants) conducted

extensive discovery, investigation, and motion practice that allowed Class Counsel to act

intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at the

settlement through arms-length bargaining involving competent and experienced counsel.  In

addition, as of this time, there are no objectors to the settlement (Mullan Decl. ISO Final

Approval, ¶ 3.

For these reasons, there is a strong presumption that the proposed settlement is fair to the

Class.  *Trew*, 2007 WL 2239210 at *2; *see Wren*, 2011 WL 1230826 at *6.

///

**2.    The settlement is fair, reasonable, and adequate.**

The Ninth Circuit has identified several factors the district court should consider, as applicable, in reaching its determination of whether a proposed class action settlement is fair, reasonable, and adequate.

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  "This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

All the relevant factors identified by the Ninth Circuit weigh in favor of settlement approval in this case.

**a.    The strength of Plaintiffs' case and the risk of maintaining class action status throughout the trial.**

Plaintiffs are convinced of the strengths of their claims.  However, Defendants are equally adamant about the strength of their defenses.  As is clear from the motion practice in this case, including the hotly contested motions as to the employer status of Insperity and the Apollo Defendants, Plaintiffs' claims and Defendants' defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiffs' claims and theories of liability and, by extension, to Plaintiffs' entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in Plaintiffs' Motion for Preliminary Approval, Dkt. No. 105, pp. 15-16, while this is a strong case for class certification and for maintaining class status through trial, there is substantial risk that Plaintiff and the Class could lose on the merits. Plaintiffs would have to prevail over Defendants arguments that the Apollo Defendants and/or Insperity cannot be held liable to Classic employees as their employers.  Although Plaintiff defeated the Apollo Defendants' motion to dismiss, litigating the Apollo Defendants' parent

11

1    employer status would require substantial, complicated discovery, and might be capable of

2    resolution only at trial.  With regard to Insperity, the applicability of traditional joint employer

3    analysis to the federal Act is uncertain; and as noted in Plaintiffs' Motion for Preliminary

4    Approval, Dkt. No. 60, pp. 15-16, Insperity could rely on case law finding that it (under its

5    previous name of Administaff) was not a joint employer for federal WARN Act purposes, and

6    other authorities finding that similar businesses were not joint employers under other California

7    employment statutes.  *See, e.g.*, *Administaff Cos., Inc. v. N.Y. Jt. Bd., Shirt & Leisurewear Div.*,

8    337 F.3d 454 (5th Cir. 2003); Dkt. 78 (Insperity Mot. for Judgt. on the Pleadings) at 11-13 and

9    cases cited.

10        At the very least, litigating these issues would require costly, complicated discovery,

11   summary judgment practice, and, in all likelihood, trial; whether Plaintiff would prevail remains

12   uncertain; and appeals would almost certainly follow any ruling by this Court.  By contrast, the

13   Settlement provides excellent recoveries to class members now without that uncertainty and

14   delay.  The risks and uncertainties facing the claims of Plaintiffs and the Class weigh in favor of

15   settlement approval.

16            **b.    The risk, expense, complexity, and likely duration of further litigation.**

17        Whatever the strength of their claims, Plaintiffs nonetheless faced numerous obstacles to

18   recovery, including likely challenges to the use of representative testimony and expert witnesses

19   to establish class-wide liability and aggregate damages, challenges to Plaintiffs' methodology for

20   calculating damages and penalties, and having to defend against Defendants' defenses, including

21   that the Apollo Defendants and/or Insperity cannot be held liable to Classic employees as their

22   employers under the federal or California WARN Acts.

23        Further, despite the suitability of this matter for class treatment, the litigation regarding

24   class certification would also have been expensive and time-consuming.  Assuming the Court

25   certified a class action for trial, Defendant could have appealed from a class certification order,

26   which might have delayed the proceedings considerably and been very expensive.

27        Additionally, if this case had proceeded to trial, the time and expenses associated with

28   trial preparation would have been considerable.  The parties would have had to prepare expert

12

1    reports and conduct expert discovery, prepare and defend against motions *in limine*, draft trial

2    briefs, prepare deposition designations and trial exhibits, and, ultimately, try the case.  A class

3    action trial in this case would be manageable, but it would also be complex, expensive, and

4    extremely time-consuming.  Even if Plaintiff obtained a favorable verdict and judgment on their

5    claims, Plaintiff and the Class would face additional expenses and delay if, as is likely,

6    Defendants were to appeal.

7        Taken together, these considerations support approval of the settlement.

8                         **c.    Settlement Amount.**

9        In determining whether a settlement is fair, reasonable, and adequate, the court must

10   consider the amount offered in settlement.  *Officers for Justice*, 688 F.2d at 625.  Under the terms

11   of the Agreement, Defendant is required to make a non-reversionary settlement payment of

12   $3,000,000.  Class Members stand to recover on average nearly $2,000.  (Mullan Decl. ISO Final

13   Approval, ¶ 5).

14       The settlement payments are significant amounts in absolute terms, and they are also

15   significant amounts when viewed in the context of the case, where WARN Act damages are

16   calculated as back pay for no more than 60 days.  29 U.S.C. §2104(a)(1)(A); Labor Code

17   §1402(a) & (b).

18       Defendants will pay the entire $3,000,000 settlement amount, which will not revert to

19   Defendants.  Class Members are not required to submit claims or take any other action to receive

20   their settlement shares, which should result in a much higher percentage of the Class receiving

21   money under the Settlement than would be the case if some affirmative action were required.

22   After 90 days, if any Class Member checks are not cashed, and the total funds remaining are

23   greater than $30,000, there will be a second distribution of checks to those Class Members who

24   cashed their initial checks.  If the total funds remaining are less than $30,000, they will go to the

25   Court-approved *cy pres*, which the parties propose should be Legal Aid at Work (Stipulation of

26   Settlement, Dkt. No. 105-2, at p. 26).

27       These amounts are particularly meaningful when one considers the serious risks and

28   uncertainties Plaintiffs and the Class faced in the litigation with regard to class certification,

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 4:17-cv-04915-HSG

1   whether Defendants will succeed on their defenses including their arguments that they are not

2   employers for purposes of federal or California WARN Act liability, and whether Plaintiffs will

3   succeed in proving liability for damages, as well as the amounts of damages they might recover

4   in the event that liability were to be established.  Simply put, this is a case involving many

5   difficult claims and risks.

6          Considering the risks and uncertainties in the litigation, including the risks that class

7   certification might be denied, the risks of losing some or all claims on the merits, including the

8   risk that Defendants will prevail on their arguments that they are not employers for purposes of

9   federal or California WARN Act liability, the risks of otherwise not recovering all the monetary

10  relief sought, and the certain delay in any recovery by not settling, the $3,000,000 Settlement

11  Fund payment provided for by the Settlement represents very good value for the Class and

12  weighs strongly in favor of final settlement approval.

13                     **d.      Extent of discovery and investigation completed.**

14         This factor examines the extent of discovery the parties have completed and the current

15  stage of the litigation to evaluate whether "the parties have sufficient information to make an

16  informed decision about settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

17  1239 (9th Cir. 1998).

18         As detailed in Plaintiffs' Motion for Preliminary Approval and in the accompanying

19  Declaration of Eileen B. Goldsmith (Dkt. Nos. 105 and 105-1), Plaintiffs (and Defendants) have

20  conducted extensive discovery and investigation.  Discovery and investigation have included, but

21  not been limited to, the following: documents requests to Insperity and the Apollo Defendants,

22  and third-party subpoenas to Bright and Standard, that yielded thousands of pages of documents

23  relating to (among other things) the structure of CP OpCo and its relationships with Insperity and

24  the Apollo Defendants, and the sale of Classic's California locations to Bright and Standard.

25  Plaintiff also secured employee data from Insperity, Bright, and Standard, including extensive

26  payroll data, that enabled the Parties to evaluate the Defendants' damages exposure.  (Goldsmith

27  Decl. ISO Preliminary Approval (Dkt. No. 105-1) ¶23).

28  ///

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT
CASE NO. 4:17-cv-04915-HSG

1   Given the substantial scope and amount of discovery and investigation completed,

2   Plaintiffs had more than sufficient information to make an informed decision about settlement.

3   This factor weighs heavily in favor of final settlement approval.

4   **e.   Experience and views of counsel.**

5   As detailed in Plaintiffs' Motion for Attorney's Fees and Costs, and in the accompanying

6   attorney declarations, Class Counsel have had extensive experience and success litigating, trying,

7   and settling wage and hour class actions (Motion for Attorney's Fees and Costs, p. 14;

8   Declaration of James Finberg in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses

9   (Dkt. No. 128), ¶¶3-11; Declaration of John T. Mullan in Support of Plaintiffs' Motion for

10   Attorneys' Fees and Expenses (Dkt. No. 127), ¶¶3-21).  Class Counsel are very knowledgeable

11   about the strengths, weaknesses and potential value of the Class's claims (Goldsmith Decl. ISO

12   Preliminary Approval (Dkt. No. 105-1) ¶23).  Class Counsel believe that the amount of the

13   settlement is "fair, reasonable, and adequate," and that, considering the risks of continued

14   litigation, this settlement is within the range of reasonableness and fair to the Class (Mullan

15   Decl., ¶ 6).  Class Counsel's experience and view of the settlement are factors weighing in

16   support of final settlement approval.  *See, e.g.*, *Wren*, 2011 WL 1230826 at *10.

17   **f.   Class Members' reactions to the proposed settlement.**

18   As detailed above, out of the approximately 1,039 Class Members, no Class Member

19   submitted any objections and only one putative Class Member opted out.  Additionally, no Class

20   Member has submitted a challenge to the Settlement Administrator or to Class Counsel regarding

21   his or her individual determination of their rehire status.  The absence of objections and only one

22   opt out is a strong indication that the Class has a favorable view of the settlement.  This factor too

23   weighs in favor of final settlement approval.  *Officers for Justice*, 688 F.2d at 625; *Nat'l Rural*

24   *Telecomm. Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence

25   of a large number of objections to a proposed class action settlement raises a strong presumption

26   that the terms of a proposed class action settlement are favorable to the class members"); *see also*

27   *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-1365, 2010 WL 1687832, at * 14 (N.D. Cal.

28   Apr. 22, 2010) (Wilken, J.) (citing *Nat'l Rural Telecomm. Cooperative*).

1   To conclude, the proposed settlement is presumptively fair, and all the relevant factors set

2   forth by the Ninth Circuit for considering whether to approve a class action settlement weigh in

3   favor of granting final approval to the proposed settlement in this case.  Therefore, the Court

4   should grant final approval to the settlement.

5   **IV.   <u>CONCLUSION</u>**

6   For the foregoing reasons, Plaintiffs respectfully request that the Court should grant their

7   Motion for Final Approval and for Entry of Judgment, enter the proposed order, and enter

8   judgment.  In connection with granting Final Approval, Plaintiffs further request that the Court

9   grant their motion for reasonable attorney's fees and costs.

10   DATED: April 22, 2019                          Respectfully submitted,

11

12   By:   _*John T. Mullan*_
          JOHN T. MULLAN
13        MICHELLE G. LEE
          MEGHAN F. LOISEL
14        **RUDY, EXELROD, ZIEFF & LOWE, L.L.P.**

15        JAMES M. FINBERG
          EILEEN B. GOLDSMITH
16        MEREDITH A. JOHNSON
          **ALTSHULER BERZON, L.L.P.**
17
18        *Attorneys for Plaintiff DAVID MCDONALD and
          the Class*
19

20

21

22

23

24

25

26

27

28