UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MCDONALD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CP OPCO, LLC, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-04915-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS; GRANTING IN PART MOTION FOR CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Re: Dkt. Nos. 126, 130, 132 |

Currently before the Court are Plaintiff David McDonald's unopposed motions for final approval of class action settlement, Dkt. No. 132 ("FA Mot."); attorneys' fees and costs, Dkt. No. 126 ("Fees Mot."); and class representative service award ("SA Mot."), Dkt. No. 130. The Court held a hearing on the motions on May 9, 2019. For the reasons stated below, the Court **GRANTS** all three motions but reduces the requested class representative service award.

**I. BACKGROUND**

　**A. Factual Allegations**

Plaintiff David McDonald alleged that he was a former employee of the following entities, all of which were initially named as defendants: CP OpCo, LLC (doing business as Classic Party Rentals, or "Classic"); Insperity PEO Services, L.P. ("Insperity"); and Apollo Global Management, LLC; Apollo Centre Street Partnership, L.P.; Apollo Franklin Partnership, L.P.; Apollo Credit Opportunity Fund III AIV I LP; Apollo SK Strategic Investments, L.P.; Apollo Special Opportunities Managed Account, L.P.; and Apollo Zeus Strategic Investments, L.P. (the

"Apollo Defendants" and, collectively with Insperity, "Defendants").[1] *See* Second Amended Complaint ("SAC"), Dkt. No. 50 ¶ 1. According to Plaintiff, Classic was an event rental company, Insperity operated Classic's human resources department, and the Apollo Defendants were Classic's parent companies. *Id.* ¶¶ 20–28.

Plaintiff alleged that he worked as a full-time employee at Classic's location in Burlingame, California, along with approximately 135 other full-time employees. *Id.* ¶¶ 32, 34. In addition to Burlingame, Classic had other California locations in Carpinteria, El Segundo, Los Angeles, Modesto, Napa, Sacramento, San Diego, San Jose, Santa Ana, and Thousand Palms. *Id.* ¶ 29. Each of these California locations employed at least 75 people. *Id.* ¶ 31.

Plaintiff had worked for Classic for approximately 18 months when Bright Event Rentals, LLC ("Bright") acquired Classic on July 11, 2017. *Id.* ¶¶ 33, 37–38. Prior to the transaction, Plaintiff received assurances that his job was not at risk, despite the possible sale of the business. *Id.* ¶ 35. On July 10, 2017, Classic's general manager for the Burlingame location announced to the staff members who were physically present that they were terminated, effective July 11. *Id.* ¶ 39. Employees who were not physically present learned of their termination when they came to work on July 11. *Id.* ¶ 40. Bright hired some former Classic employees, but Plaintiff was not among those re-hired by Bright. *Id.* ¶¶ 43–44. Employees at Classic's other California locations "showed up to work on or around July 10, 2017 and found their facilities locked" and were notified by Defendants that they had been terminated, effective immediately. *Id.* ¶ 45.

Later that same week, Plaintiff received a letter from Insperity, "notifying him that his employment with Defendant Classic and Defendant Insperity was terminated on July 11, 2017." *Id.* ¶ 46.[2] Plaintiff alleged that Defendants did not provide notice of the layoffs to their employees prior to July 10, *id.* ¶ 38, and did not provide the relevant state, county, or city entities with at least 60 days' notice of the closures of the California locations, *id.* ¶ 48.

---

[1] Classic is not a party to the settlement agreement because it is defunct and the Clerk entered default against it on October 23, 2017. *See* Dkt. No. 29.
[2] The exhibit Plaintiff references in the SAC is attached to the First Amended Complaint, Dkt. No. 13, as Exhibit A, but is not attached to the SAC.

2

**B. Procedural Background**

Plaintiff filed his initial complaint on August 23, 2017, Dkt. No. 1, and his First Amended Complaint on September 14, Dkt. No. 13. On October 23, the clerk entered default against Classic. Dkt. No. 29. Plaintiff filed the Second Amended Complaint on November 27. Dkt. No. 50.

Plaintiff brought suit on behalf of the following putative class: "All persons who were employed by Defendants, at any of Defendant Classic's California locations and who were terminated pursuant to a mass layoff or termination (as those terms are defined in California Labor Code Section 1400), or a mass layoff or plant closing (as those terms are defined in the Federal WARN Act) by Defendants on or around July 11, 2017 . . . ." SAC ¶ 49. He alleged three causes of action: (1) failure to provide timely written notice of a mass layoff or plant closing, in violation of the Federal WARN Act, 29 U.S.C. § 2101, *et seq.*; (2) failure to provide timely written notice of mass layoffs, in violation of California Labor Code § 1400, *et seq.*; and (3) violation of California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq. See* SAC ¶¶ 51–78.

The parties engaged in a magistrate judge settlement conference in May 2018, at which they reached a settlement agreement. *See* Dkt. Nos. 95, 96. Plaintiff moved for preliminary approval of the class action settlement on August 9, 2018, Dkt. No. 105, which the Court granted on January 28, 2019, Dkt. No. 119.

Plaintiff moved for attorneys' fees and costs, *see* Fees Mot., and for approval of a class representative service award on March 18, *see* SA Mot., and for final approval on April 22, *see* FA Mot.

**C. Settlement Agreement**

The parties submitted a class action settlement agreement as part of their motion for preliminary approval, which the Court granted. *See* Stipulation of Settlement ("Settlement"), Dkt. No. 105-2. The key terms are as follows:

<u>Settlement Class</u>: The proposed settlement class consists of "all persons who were employed by CP OpCo dba Classic Party Rentals at a Covered Location (that is, San Diego, Santa

3

1 Ana/Orange County, Culver City/Inglewood (Hillcrest Blvd.), El Segundo, Burlingame/San Francisco, Compton, Modesto, Napa, San Jose, and Thousand Palms/Palm Desert) in California and who were terminated from their employment with CP OpCo dba Classic Party Rentals on or around July 11, 2017." Settlement ¶ II.F. Plaintiff estimates this class to consist of 1,039 people. FA Mot. at 5.

Release: Class members agree to release "all causes of action that were alleged or reasonably could have been alleged in the Second Amended Complaint based on the facts, legal theories, allegations, or causes of action contained therein concerning: (a) violation of the California or federal WARN Acts; (b) unfair business practices based on the afore-referenced claims; (c) any other claims or penalties under the statutes pleaded in the Action based on the afore-referenced claims; and (d) all damages, penalties, interest, and other amounts recoverable under California and federal law based on the afore-referenced claims, to the extent permissible, including but not limited to the California Labor Code, as to the facts alleged in the Action." Settlement ¶ II.II.

Settlement Fund: $3 million, non-reversionary, funded by Insperity and the Apollo Defendants, with $2.06 million available for class member settlement payments. FA Mot. at 4–5. Counsel estimates that the average individual settlement payment will be $1,983. FA Mot. at 6.

Allocation Plan: The settlement allocates 75% of the net settlement fund to class members who were not rehired within one month of termination and the remaining 25% of the fund to those employees who were rehired within one month. Settlement ¶ III.M.2(a)–(c). Individual payments will be allocated 50% to back wages and 50% to interest and penalties. Settlement ¶ III.M.2(f). Class members will be automatically mailed a settlement check, without needing to submit a claim. Settlement ¶ III.M.2(g). Payments intended for class members who do not cash their settlement checks within 90 days will be re-distributed to those who cashed their settlement checks. Settlement ¶ III.M.2(g). If less than $30,000 remains in the fund after the initial distribution, the residual will be donated to Legal Aid at Work as a cy pres recipient. Settlement ¶ III.M.2(h).

Attorneys' Fees and Costs; Administration: Class counsel were permitted to seek up to

4

30% of the $3 million settlement fund for attorneys' fees as well as actual litigation expenses incurred up to $15,000. Settlement ¶ III.M.4. The settlement was not contingent upon these fees being granted. *Id.* Class counsel separately agreed with Defendants to request no more than their lodestar. Declaration of Eileen B. Goldsmith ("Goldsmith Decl."), Dkt. No. 105-1 ¶ 36. The parties selected a settlement administrator, which agreed to cap its costs at $15,000. Settlement ¶¶ III.OO–NN.

Class Representative Award: The settlement allowed for an incentive award of up to $15,000 to McDonald but was not contingent upon this award being granted. Settlement ¶¶ III.D, III.M.3.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Class Certification

Final approval of a class action settlement requires, as a threshold, an assessment of whether the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on January 28, 2019, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 119 at 5–9. The Court affirms its previous findings and certifies the settlement class.

### B. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon*, 150 F.3d at 1025. To assess whether a proposed settlement comports with Rule 23(e), courts should consider the following factors:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1025 (the "*Hanlon* factors"). No single factor is the "most significant," *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), and "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge," *Hanlon*, 150 F.3d at 1026. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. The Court begins with the adequacy of notice before turning to whether the settlement itself is fair, reasonable, and adequate.

### i. Adequacy of Class Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The Court must direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). The settlement administrator mailed the class notice to putative class members, attempted to find updated addresses for class members whose notices were returned undelivered, and re-mailed those notices. *See* FA Mot. at 7–8. Only nine of the 1,039 notices were ultimately deemed undeliverable. *See* Dkt. No. 132-2 ¶ 9. The administrator also established a website and toll-free number for putative class members who had questions about the settlement. FA Mot. at 8. The administrator received one request for exclusion and no objections. *See* Dkt. No. 132-2 ¶ 10–11. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### ii. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### a. Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Continued Litigation; and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties . . . arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (noting that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

This case settled before the Court had an opportunity to consider the merits of the claims, including before the Court ruled on Insperity's motion for judgment on the pleadings. However, continuing to litigate this case would have posed substantial risks for Plaintiff and generated significant costs. For example, Plaintiff would have needed to continue discovery into the relationship between the various entities named as Defendants and Defendants would have continued to litigate whether they could be held liable for Classic's alleged WARN Act violations. *See* FA Mot. at 11–12. Eventually, Plaintiff would have needed to move for class certification and summary judgment, as well as potentially proceed to trial, and Defendants might have moved for summary judgment. This additional litigation would have, in the best-case scenario, been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff and the class going home empty-handed. Accordingly, these factors support approving the settlement.

7

### b. Settlement Amount

The settlement amount also weighs in favor of approval. Defendants will make a non-reversionary settlement payment of $3,000,000 and individual class members stand to recover an average of nearly $2,000. *See* FA Mot. at 13. Given that WARN Act damages are limited to 60 days' worth of back pay, this is a significant recovery for the class members, who, as class counsel points out, earned approximately $10 to $30 per hour when they were employed by Classic. *See* Fees Mot. at 8. As the Court previously noted, the settlement represents approximately 37.5% of the Defendants' maximum possible exposure. *See* Dkt. No. 119 at 12. In addition, because class members are not required to submit claims and uncashed checks will be redistributed to class members, settlement dollars will reach the class members in a timely and efficient manner. Further, if less than $30,000 remains in the fund after the initial distribution, the residual will be donated to Legal Aid at Work, which the Court finds to be an appropriate cy pres recipient. *See* Settlement ¶ III.M.2(h).[3] Therefore, the settlement amount supports approval.

### c. Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Class counsel has engaged in significant discovery, including obtaining and reviewing "thousands of pages of documents" relating to the structure of the various entities, the sale of Classic's California locations, and payroll records. *See* Mot. at 14. The Court finds that

---

[3] The Ninth Circuit has noted that the cy pres doctrine may be employed in the context of a class action settlement to "put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (quotation omitted). However, a cy pres distribution also "poses many nascent dangers" because the choice of a cy pres beneficiary "may answer to the whims and self interests of the parties, their counsel, or the court" if selection "is not tethered to the nature of the lawsuit and the interests of the silent class members." *Id.* at 1039. In light of these concerns, the Ninth Circuit requires that there be a "driving nexus between the plaintiff class and the cy pres beneficiaries"—in other words, the award must be guided by the objectives of the underlying statutes and the interests of the silent class, and must not benefit a group too remote from the class. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotation omitted). The Court finds that Legal Aid at Work meets the *Dennis* requirements because it shares the objective of the WARN Acts in ensuring employee rights and any distribution will benefit people making claims similar to those Plaintiff made. *See Cifuentes v. CEVA Logistics U.S., Inc.*, No. 16-CV-01957-H-DHB, 2017 WL 2537247, at *5 (S.D. Cal. June 12, 2017) (approving Legal Aid at Work as cy pres recipient in wage and hour class action settlement).

the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits and the extent of the potential damages. Therefore, this factor weighs in favor of approval.

### d. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and it finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class's interests in this action given their extensive experience litigating class actions. *See* Dkt. No. 119 at 8–9. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest but favors approval.

### e. Reaction of Class Members

The reaction of class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice advising each class member of the requirements regarding objections and exclusions was served in accordance with the methods approved by the Court. Of the 1,039 class members, only one opted out and none submitted an objection. *See* FA Mot. at 15. Further, at the May 9 final fairness hearing, no putative class member voiced an objection. The Court finds that

9

the nearly unanimous positive reception of the settlement by class members favors approval. *Cf. Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected).

* * *

After considering and weighing all of the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of class action settlement is **GRANTED**.

### III. MOTION FOR ATTORNEYS' FEES AND COSTS

In its second unopposed motion, class counsel asks the Court to approve an award of $900,000 in attorneys' fees and $9,894 in costs. *See* Fees Mot. at 1.

#### A. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*

*v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (quotation omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51. Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Id.* at 1048.

Class counsel seek fees equal to 30% of the settlement fund, which amounts to $900,000. *See* Fees Mot. at 10. Counsel represent that they have "devoted more than 1,405 hours to this litigation" at billing rates from $280 per hour for litigation assistants to $485 per hour for associates to $980 per hour for partners. *See* Fees Mot. at 13; Dkt. No. 127 ¶ 41; Dkt. No. 128 ¶ 24. Counsel thus calculates their lodestar—not including time spent on this fees motion or the motion for final approval—to be $915,353. *See* Fees Mot. at 12–13. At the motion hearing, counsel estimated that their lodestar had increased to $960,000 and would continue to increase until funds were distributed to class members.

The Court finds the request for $900,000 in attorneys' fees to be reasonable. Counsel achieved a real benefit for the class members, who stand to receive an average of nearly $2,000 apiece. Counsel attained this result only after engaging in third-party discovery and fairly

11

complex motion practice, including defeating the Apollo Defendants' motion to dismiss in which they argued that they could not be held liable as parent companies. Though the request for fees equal to 30% of the settlement fund is higher than the 25% benchmark, it is well within the ordinary range of fees approved by courts in this district. *See, e.g.*, *Bower v. Cycle Gear, Inc*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving fee award equal to 30% of settlement fund, resulting in a 1.37 lodestar multiplier). The Court also finds it noteworthy that the requested fees are lower than the lodestar, resulting in a lodestar multiplier of approximately 0.98. Given the circumstances of this case, the Court finds the fee request reasonable under both the percentage of recovery and lodestar methods, and **GRANTS** the request for $900,000 in attorneys' fees.

### B. Costs

Class counsel are also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seek reimbursement from the settlement fund for $9,894 in litigation costs and expenses. *See* Fees Mot. at 15. These costs include filing fees, copying costs, postage, legal research, couriers, service of process, and other costs that would normally be charged to a paying client. *See id.*; Dkt. No. 128-1 Ex. G; Dkt. No. 127 ¶¶ 57, 58. Defendants do not oppose this request and no class members have objected. The Court finds the amount requested by class counsel reasonably incurred and **GRANTS** in full the motion for costs in the amount of $9,894.

### IV. MOTION FOR CLASS REPRESENTATIVE SERVICE AWARD

Finally, in its third unopposed motion, class counsel asks the Court to grant a service award in the amount of $15,000 to the named Plaintiff, David McDonald. *See* SA Mot. at 1.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.

Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This vigilance is particularly important where "the proposed service fees greatly exceed the payments to absent class members." *Id.* at 1165 (quotation omitted). The district court must evaluate an incentive award by analyzing "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (internal quotation and alterations omitted). Courts in this district have recognized that a $5,000 service award "is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (citing *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

McDonald submitted a declaration detailing his efforts in this litigation, which he estimates totaled to 43.5 hours. *See* Dkt. No. 130-2 ¶ 8. McDonald explained that he "sought out potential attorneys," worked with counsel prior to the filing of the lawsuit, searched for documents, conferred with his fellow terminated co-workers, coordinated with class counsel, and attended the magistrate judge settlement conference. *See id.* McDonald also expressed that he was "concern[ed]" that filing this lawsuit would "put [his] future employment at risk." *See id.* ¶ 10.

Considering all of the circumstances of this case and McDonald's involvement, the Court concludes that a $15,000 incentive award is outsized but that a service award of twice the presumption is fair and reasonable. McDonald was actively involved in the successful prosecution of this lawsuit and thus the presumptive award does not adequately compensate him for his efforts or reputational risk incurred. However, the requested service award is approximately 7.5 times the recovery of an average class member and is disproportionate to the number of hours McDonald put into this lawsuit. Accordingly, the Court **GRANTS IN PART** Plaintiff's motion for a class representative incentive payment and awards McDonald $10,000.

## V. CONCLUSION

For the foregoing reasons, the Court orders that:

1. Plaintiff's motion for final approval of class action settlement is **GRANTED.**

2. Plaintiff's motion for an award of attorneys' fees and costs is **GRANTED**. Class counsel shall be awarded $900,000.00 in attorneys' fees and $9,894 in costs from the settlement fund.

3. Plaintiff's motion for a class representative service award is **GRANTED IN PART** and the Court awards McDonald $10,000.00.

The parties and settlement administrator are directed to implement this order and the settlement agreement in accordance with the terms of the settlement agreement.

**IT IS SO ORDERED.**

Dated: 5/13/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge